Ranger and George v. Wells Fargo. Mr. Goland. Good morning, and may it please the Court. My name is Jeffrey Goland, and I represent the appellants Loris Ranger and George Gordon. We appeal in this case from the dismissal with prejudice of two claims. I would say the primary claim in this case arises under the Real Estate Settlement Procedures Act, RESPA. RESPA was recently amended. It was amended in 2010, and the amended version was implemented in 2014. My client's claims under RESPA arise under the portion of the statute that deal with error resolution. Error resolution in mortgage servicing. My clients were the borrowers. Wells Fargo was the mortgage servicer. In this case, there really can be no dispute that there was a very serious mortgaging servicing error. Wells Fargo brought a foreclosure lawsuit against my clients in state court, and that case was pending for years, and that case was brought by mistake. In fact, it ended with a trial, a trial in state court, an injury trial, where the state court judge entered an order involuntarily dismissing Wells Fargo's foreclosure claim. We understand all that. Before that trial, my client attempted to alert Wells Fargo to the error, and Wells Fargo denied that there was any error. Then after that trial, my client once again sent another written notice of error to Wells Fargo, notifying it that there was continued problems. Let me, I'm sorry, go ahead. Go ahead, go ahead. Let me just ask a clarifying question. With respect to the October 5, 2015 letter that Wells Fargo sent, I am understanding your client's position to be that there was some default, but it wasn't that the amount in controversy shouldn't have been $104,000 because that amount also included what was at stake in the original foreclosure action. Is that what your position is? I mean, are you, is it your client's position that there was a default of some type, but it just wasn't $104,000 worth? No, Judge, that's not our position. We interpreted that letter at the time as indicating that Wells Fargo had charged all the amounts originally claimed in the original foreclosure. But, in fact, it is not our position that there was a default, and it wasn't what the state trial court found. Right, but that was in April of 2015, and then there was, and actually what the state trial court found as I read through the transcript was that Wells Fargo had not proven that there had been a default as of the time, I guess, 2013 or whatever. But that doesn't mean that your clients no longer have to pay mortgage payments after that. So, right, I mean, you're in agreement with that. Right, right. So I think I understand Your Honor's question better. It wasn't that we're saying there was no default. It was that my clients did not know, in part due to the insufficient response to the first notice of error, where they stood or what Wells Fargo would expect them to pay. And they expected to hear from Wells Fargo after the foreclosure trial was resolved in their favor, and they expected that there would be some sort of a resolution to the confusion. They never took the position that they didn't have to make mortgage payments. Did they make mortgage payments in the intervening period? They did not make mortgage payments in the intervening period because they didn't know who to pay or how much to pay. After the April 25th dismissal? Correct. They did not make any payments after that. They did not make payments after that. So they went ahead and filed a lawsuit. You didn't ask them under the CFR. You didn't file a notice, in effect, to get the account settled. We want to find out what the status is. When you did it the first time, they sent you a response that was a mile long, in my judgment. They sent you all the records, everything else. They anticipated their duty under the regulation. The way that regulation is read, it says you can make a demand for an accounting, basically. That's what the whole purpose is. And then they have to do an investigation. Then they have to give you a reason and tell you either there's an error or there's no error. Correct. And then if you want documents in order, then you ask for documents, and they produce the documents. So the error is all documentary. What they did is they anticipated a request for documents, and they produced all of the documents, everything. But the documents. They did that in December of 2014, before the dismissal the following year. So you had all of the documents prior to the dismissal. We had the documents. Yes, you had every document up to date that had to do with the account, that had to do with the account. You never asked for anything else. Then you filed a lawsuit and made another request pending the lawsuit. So the defense counsel simply said you could communicate with me. That has a sequence of events wrong. Before we filed the lawsuit, and it was very shortly before we filed the lawsuit, we filed another notice of error. Although we had gotten documents. I can't find it in the record. It's discussed in the second amended complaint. No, no, not the complaint. I can't find the notice in the record. Are you talking about the October 20, 2015, QWR? Yes, Judge. Yes, Judge. We sent them a second notice of error, and we explained to them. There's an October 21. It was in October of 2015. Yes, October 20, 2015. It refers basically to what went on in the lawsuit or prior to the lawsuit. Correct. My reading of it doesn't ask for a current statement of basically the relationship between the parties. Well, Judge, what we told them, Judge Cioffla, was that you had foreclosed on us an error. You're continuing to do so. And then you filed suit two days later or something like that. It was simultaneous. It was close to simultaneous. Well, it was close to simultaneous. They got the notice after the lawsuit was filed. They did. And our notice talks about issues including res judicata. Whatever the case. And then the Traurig firm said you can deal with us, and that's where we are. Right. And we had hoped that that lawsuit would have triggered the investigation and correction that we sought the first time. You don't want the documents, counsel? It's not documents. No, no. You don't want the documents that show the contractual relationship between the parties. That's correct. We weren't looking for documents. You don't want them at all. We weren't looking for documents. You don't want a record of the payments made and this, that, and the other thing and how they were allocated. No, we wanted an adjustment to the count so that Wells Fargo would not continue to pursue collection of the amounts it had been erroneously pursuing. So was one of the problems during the trial before the state court that there were like three different documents that purported to tell what the payments were and they were in conflict with each other and the Wells Fargo examiner was just not able to explain which one was correct? Wasn't that one of the problems? That was one of the problems. Okay. And so ultimately, the court dismissed the foreclosure action because it found that Wells Fargo hadn't proven it, right? So is your position then that once it was dismissed, you shouldn't have had to have paid for any of the interest or penalties or anything at all or back payments that were due up until the time it was dismissed? Is that what your position is? That is our position. Okay. And is it further than your position that in October of 2015 when you were notified that they were foreclosing again and the notification said it was for $104,000, that that $104,000 figure included some of the penalties, interest, and payments that were due up to and including April 15th or whatever the date was in 2015 when the state court dismissed the foreclosure action? Yes, that is our position. And so what you're seeking is to have the number from $104,000 explained as to what part of that is composed of the pre-dismissal of the foreclosure and what comes from after. Is that right? Yes, that's exactly right. And I want to remind the court that Wells Fargo denied in response to the first notice of error that there was any problem in pursuing foreclosure. It said in its notice of error response that the foreclosure was valid. What opportunity did you give them to explain? I'm sorry, Judge? What opportunity did you give them to explain? Well, in response to the first notice of error, we gave them the full penalty. No, after you got the notice, you wrote the letter of October 20. No, I'm referring to the 2014 notice. But the amount we're talking about is the amount that they said was due. This is after the foreclosure is over with. Well, the first one was before. You're complaining about the amount due after the foreclosure, the new amount. In the 2015 notice. Yes, yes, yes. So you want an explanation of that, but you didn't ask them. You sent them the letter for an explanation of that amount and then filed suit. Because they had already, in 2014, not only had they failed to give us an explanation, but they were going forward as if there had been no error. And we reminded them, and I think the way it was presented in Wells Fargo's brief gets the sequence of events inaccurate. We reminded them in the 2015 notice, the one that we sent in October, that we already notified you that there was a problem with the foreclosure in 2014. You say some time for rebuttal. The red light's on. Ms. Mello. Good morning. May I please the Court? My name is Kim Mello, and I represent Wells Fargo in this matter. The law is, of course, well settled that if a servicer fails to respond to a notice of error or provides an inadequate response, that the borrowers are entitled to actual damages. And they are, however, entitled to those actual damages only if there is a causal link between the inadequate response and the purported damages. But let me just, I'm sorry to interrupt, but I want to make sure I have the facts straight. The $104,000 that you all said was still outstanding in your October letter. Does that include amounts from before the April 2015 state dismissal of the foreclosure action? Your Honor, the record has not been developed for me to be able to explain exactly where that number came from. Well. Yes. But, I mean, isn't that part of the problem, right? I mean, that's what they want to know. Where did that number come from? It's part of the problem to the extent that in 2015 they sent their second notice of error, which is, it is in the record, Your Honor. It's docket. Right. The October 20th, 2015 one. It's docket 47-4 is where it's located. So when they sent that notice of error, okay, they sent it. Then they filed a lawsuit prematurely because we hadn't even had a chance to respond. And you may well be right that it was premature. I mean, that's, but does that then excuse Wells Fargo from responding? Maybe it does. I don't know. What is your position? Because Wells Fargo did not respond. Right. We eventually did respond to that post the filing of the initial complaint. It essentially said that because they raised two things in that 2015 notice of error. First, they said it's follow-up correspondence to our 2014. Did you explain where the $104,000 figure came from? We did not because we said you've already filed a lawsuit so that any issues dealing with our new demand letter, okay, we'll deal with in the existing lawsuit. And that was essentially our response. Your position was that CFR was trumped by the lawsuit. Your CFR duty was to explain. It wasn't. Our duty wasn't trumped. We still responded. No, I understand that, but you're now in litigation and you'll do it with lawyers. At this point, we're in litigation. We've already filed the lawsuit. Well, your position has to be that it was trumped by the lawsuit because otherwise you didn't comply with the CFR since you didn't provide an explanation as to the one thing they were requesting, which is what is the $104,000 composed of. So isn't your position that it was trumped by the lawsuit? Our need to respond to the issue of the $100,000, you're correct. We did not respond. Because of the lawsuit. Specifically to that. And our reasoning was it was because of the lawsuit, but I don't want to lose sight. I'm sorry, but I just want to make sure that we follow up on this line of questioning here. And you might well be right. I'm not suggesting otherwise. But do you have any case law or any authority which supports your position that your response, that the CFR requirements were trumped by the lawsuit? No, not that they were trumped. We do not. What the case law does say is that at the point that you file a lawsuit, your lawsuit is premature. We didn't think our responsibilities were trumped because we did go ahead and file a response. It just didn't directly address the discrepancy in the amount. You did not think that your CFR responsibilities were trumped and you did file a response. Didn't the response have to comply with the CFR requirements? It did. And if it didn't, isn't that a problem for you? If there's a finding that it wasn't adequate, okay, which is I think kind of where your question's going, then at that point the issue, and that's what I think is we're losing sight of the issue, is whether as a result of that adequate response they're entitled to actual damages because. But haven't we already decided that, I mean, there's a causal link when in Renfro didn't we already decide that there's a causal link when an inadequate response is given to a problem that is raised? That makes the problem current to that time. I mean, didn't we already decide that? Okay, so Renfro is very different from this case, and this is why Renfro is different. What happened in Renfro was that the borrower was actually making payments, okay, over a period of time. Yes, but the plaintiffs here say they were making payments, and the state court seems to have thought they were making payments because it dismissed your foreclosure action in April of 2015. So why isn't that the same? It's not the same because the payments that they made were during a very specific time frame. The payments that they made were from some point in time in February 2012 to February of 2013. Based on their own allegations, they say, we made some payments when we learned of the foreclosure referral, and we made some payments after. When they sent that original 2014 notice of error and we responded, we said, we've credited those payments. But your loan is not your offer. But here's the problem, right? I understand, but your explanation sort of ignores the fact that there's this state judgment dismissing your foreclosure action in April of 2015. So how do you fit that April 2015 dismissal of your foreclosure action into what happened here? I mean, it seems like you have to account for that. You can't just ignore that that occurred. That is a binding judgment, and you have to comply with that. Absolutely, and I'm not ignoring that that occurred. So did you seek damages, or not damages, but did you seek interest payments, et cetera, for the period from before the April 15th dismissal? If I may explain, the April 15th dismissal of that foreclosure action was based on the fact that we failed to prove our default, not that there was no default. And that's a key distinction, especially when you look at all the cases. We failed to prove the default. We have the right, okay? So you can keep bringing foreclosure actions for the same period until you win? You can under- Can you? Absolutely. It's well settled under floor Supreme Court precedent. For the same period? Not for the same period, and that's not what we did. Right, and that's what I'm trying to find out from you. What did that $104,000 cover? Did it cover that period for which the foreclosure action was dismissed? That I don't, I mean, it's outside the record. I don't know because- Right, but isn't that exactly the problem? Because that is precisely the question that was being asked in the QWR. What does the $104,000 cover? Right, and exactly, and that's why I'm saying if that was an inadequate response, they still have to prove that they sustained actual damages. Counsel, my understanding, they asked the question about the $104,000 in the October 20 letter. Yes. Filed suit the next day. Under the regulation, that letter of October 20 triggered the responsibility to run an investigation to make a determination whether that figure was an error or not. Absolutely. If it was not an error, then they could demand documents to show whether it's an error or not. I mean, that's the way the scheme is. Right, I mean, that's the whole purpose. That's the regulatory scheme. My understanding is that because the lawsuit was filed, this business about running an investigation and determining whether the $104,000 was correct, and then they would ask for documents was all cut off by the lawsuit. Right, I mean, that's essentially the position that we took. And now that we're in the lawsuit- Except that you responded. I mean, you just stood here not 10 minutes ago and said, well, we decided to respond. The Greenberg-Torrig letter on November 23 responded to that October 20 letter. And that response was after Wells Fargo had been served with process. Exactly. And the lawyer said to Mr. Golat, you confer with me. Correct. Okay. But in the meantime, there's been no foreclosure action since October 2015, right? No, what occurred was we sent a new demand letter saying, you're in default. We're going to give you the opportunity to cure. Right, and they sent the- And if you don't cure, then we're going to file a new foreclosure action, which we have the right to do. But it hasn't been done, right? Well, it's outside of the record, but it has been done, Your Honor. Oh, it's outside the record. Okay, but isn't that sort of a problem for the- So how do you put all that together? There's the second QWR, then two days later they file a lawsuit, and then the record kind of just comes to an end. And so there's nothing in the record to show that any damages flowed from the second QWR if the foreclosure suit is outside the lawsuit. Well, I mean, yes, I mean, that is a problem. But the problem with trying to link damages to the 2015 QWR is what the plaintiff's argument is, is that it was follow-up correspondence. That's what they're saying. They're saying it was follow-up correspondence to the original 2014 QWR. That was filed 11 months after our response to the 2014 QWR, and it was filed seven months after dismissal. I mean, once the involuntary dismissal was entered, there was no basis for follow-up related to the 2014 QWR. Those issues were over. We had the right to then proceed with our demand letter and seek a new foreclosure action for their failure to pay, which, I mean, it's now over five years that they failed to make a payment. So my colleagues seem very focused on the second QWR, but I have some questions about the first QWR and the resolution and the foreclosure action. So are we to assume that the resolution of the foreclosure action washed out all the damages that might have stemmed from the first QWR? I think their position is, in response to the first QWR, there should have been a correction, that there was not $104,000-plus owed. There should have been a correction, and they would say, my client has suffered certain damages beyond what was covered in the foreclosure action that we're entitled, that we can prove, like emotional distress damages. There might be some other elements of damage, actual damage that are recoverable under RESPA, as a result of the first, the response to the first, the failure to correct after the first QWR. So what do you say about that? Well, they essentially are seeking four types of actual damages stemming from the 2014 QWR. The first damages that they're seeking are for attorney's fees incurred during that first foreclosure action. And that seems like it may well have been washed out by the settlement of the attorney's fees. Exactly, and that's our position. But what about the other elements? For a double recovery. As to the finance charges that they're seeking, a number of points. First, in the complaint itself, allegations, of course, must be accepted as true in the context of a motion to dismiss. They essentially state that the finance charges and interest flow from the improper failure to credit borrower's payment, not from the failure to respond to the QWR. So even their own allegations don't link the finance charges to the failure to respond to the QWR. But they do, though. I mean, isn't that the whole problem? Because what they're asking for, when they say that they come from the failure to credit the payments, and they've asked you to, and they've told you in the QWR that the accounting was incorrect, that's exactly what they're doing. They're linking it together. Even if the court wants to read it that way, their claim still fails. And it still fails because what they're saying is they're saying that they believe they were assessed versus incurred. And if you look back at REMFRO, which I think why REMFRO is so important, these are pecuniary losses. You have to have incurred them. They can't just be something that they theoretically think might have been assessed. They have to have incurred these damages. But do you think maybe that the judge should have allowed leave to amend, for instance, on the issue of damage to credit rating? They conclusively allege damage to credit rating, right? And there's case law that says you have to do more than that. But maybe there should have been an opportunity to amend to allow them to explain that more, that they applied for credit and were rejected because of a report made by Wells Fargo or something like that. And I certainly understand the question. But I think here, if they had, they knew the facts. If they had them, they would have pled them. And they have to plead a plausible claim, not a possible claim. And if you read through their allegations, it's just all possibilities. It's all we think they may have assessed this. But this was on the first complaint. There had not been an amended complaint, right? There isn't. This is the amended complaint, but it was amended to add the conversion claim. Okay. Not to fix some of the conclusory insufficient allegations. It's full of conclusory allegations, and that's the problem with the complaint. It is full of conclusory allegations. It just says they didn't do their job. They didn't. That's about the size of it. They didn't do their job. Exactly. And it disguises the response in 2014 with all the documents and everything else. It doesn't mention any of that. Right. I mean, if they had the facts, they should have pled them. It doesn't say it. I think your time is up, and we understand your position. Thank you, Your Honor. Is there an argument here that the court dismissed it without leave to amend? Certainly, there is. I don't recall it being in the brief. Is there an argument somewhere before us on that point? Your complaint is nothing but conclusions. That's my view. Just broad conclusions that nobody could possibly respond to, and a judge couldn't make heads or tails of. And this dialogue that's going on between the bench and you and your colleagues shows that to be the case. And we should have been given leave to amend because . . . Did you say anything to the judge in a motion? We did a motion for rehearing. We did do a motion for reconsideration. And you asked for leave to amend. I believe that there was a reference to leave to amend to the extent that there was some misunderstanding of our allegations in our motion for reconsideration. Because I want to explain the procedural posture, too, because I think there may be some confusion on that. When we filed the lawsuit, we initially filed it in state court. That lawsuit was not based on an inadequate response to the 2015 notice of error. That lawsuit was based on an inadequate response to the 2014 notice of error. Are you telling us there's no 2015 issue in this case? When we amended . . . No. You sent a letter on October 20, 2015 . . . Correct. Asking for an explanation of the $104,000. And pointing out that we didn't get it in 2014. Asking for an explanation. You didn't put them on a notice. Right. That triggered their obligation under the CFR to run an investigation on that notice and to calculate and determine whether that was the correct figure. And if you didn't like that, then you could ask for documents. That's the way the scheme is. We could ask for documents or a correction. That's the way the scheme operates. But you filed the lawsuit and Greenberg Traurig said, deal with me. And what is there in the record of the response to their letter of November 23, 2015? There's nothing in the record in response to their letter. At that point . . . So what we have is a complaint and an order dismissing the amended complaint. Right. But there was a long period of time between the date the complaint was filed and the procedural posture was we filed the complaint, Wells Fargo answered the complaint, they did not move to dismiss it. We went through discovery. After discovery, we moved for leave to amend the complaint. So the first time the court addressed the sufficiency of the allegations, it was dealing with the amended complaint. There was never any ruling on the sufficiency of the initial complaint. Okay. I think we have your point. And if there's nothing further, then I will thank the court for your time. We'll move to the last case, Garcia.